Filed 7/30/14  P. v. Tamayo CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUSTAVO J. TAMAYO et al.,<br><br>    Defendants and Appellants. | B243893<br><br>(Los Angeles County<br>Super. Ct. No. SA075405) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert J. Perry, Judge.  Affirmed as modified.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant Gustavo J. Tamayo.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant Rickey R. Williams.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and David A Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellants Gustavo J. Tamayo and Rickey R. Williams, both members of Inglewood 13, a criminal street gang, conspired with two other Inglewood 13 members to rob four Ross Dress For Less stores. They contend evidence that they conspired with one another to commit the robberies was insufficient to show the crimes were gang related.

We affirm.

## BACKGROUND

### A. Crimes

On Independence Day, July 4, 2010, Tamayo and Alex Salcedo, another Inglewood 13 member, arrived at the back door of a Ross Dress for Less store (Ross) on South Alvarado in Los Angeles. Tamayo brandished a gun at the store's assistant manager and forced her to take him to the store's cash office. Tamayo and Salcedo took between $40,000 and $50,000 from the safe, bound the assistant manager with plastic ties, and left the store.

Two months later, on Labor Day, September 6, 2010, at 4:43 p.m., Tamayo and an unidentified associate entered a Ross store on South Figueroa in Los Angeles wearing Domino's Pizza uniforms and carrying pizza bags. They attempted to gain access to the back of the store, ostensibly to set up pizzas for the employees, but when the manager denied them access they left.

About 15 minutes later, Williams and an unidentified older associate arrived at the Ross store on Hollywood Boulevard in Los Angeles wearing Domino's Pizza uniforms and carrying pizza bags. They told assistant manager Monica Pena they were delivering pizza ordered by the Ross corporate office to recognize the employees for working on the holiday. The older man then dialed a number on his phone and handed it to Pena, stating it was the Ross corporate office. After speaking to the person on the phone, Pena instructed security guard Joel Maldonado to take Williams and the other man to a break room at the back of the store near the cash office to set up the pizzas. When they reached the back room, the older man brandished a handgun at Maldonado and instructed him to open the cash office door, but he was unable to. He then struck Maldonado on the back of his head with the gun and told him to call another employee to open the cash office.

2

While this was happening, Pena went to the back for her lunch break and saw the assailants holding Maldonado against a wall. There was blood on his neck and on the cash-office's keypad. The perpetrators forced Pena to open the cash office, bound Maldonado with plastic ties and duct tape, instructed Pena to open the safe, and put approximately $45,000 in the pizza bags. They then bound Pena and left.

A few minutes later, Tamayo and Salcedo entered a Ross store on Jefferson in Culver City dressed in Domino's Pizza uniforms, wearing latex gloves and carrying pizza bags. They spoke with supervisor Salvador Rivera, who took them to the back office. Salcedo handed Rivera a phone on which he spoke with a man who said he was from the Ross corporate office. The man authorized the pizza order and instructed Rivera to check his email for payment instructions. Rivera told Tamayo and Salcedo to set up the pizza in the break room while he went into the main office to use a computer. Tamayo and Salcedo followed him in and closed the door, and Tamayo drew a handgun and pointed it at Rivera. Tamayo told Rivera he was being robbed and said they wanted only money, not to hurt him. Rivera informed Tamayo and Salcedo that the money was kept in a room adjacent to the office, and they all began to walk to that room. Loss prevention employee Vincent Gamez came to the back of the store to get a slice of pizza and was talking on his phone outside the office when Tamayo, Salcedo, and Rivera exited. Tamayo pointed the gun at Gamez, and he and Salcedo took both men into the cash room and demanded that Rivera open the safe. After Rivera complied, Salcedo restrained him and Gamez with plastic ties. Tamayo took $30,000 from the safe and put it in a pizza bag, and he and Salcedo left.

### B. Investigation

Culver City Police Detective Ryan Thompson investigated the robbery at the Ross store in Culver City. He viewed fingerprint evidence and the security camera footage from both that store and the store on Hollywood Boulevard, and based on this evidence and information from undercover detectives, ultimately arrested Tamayo and Williams. A search revealed a loaded firearm, several hundred dollars in cash, and two cell phones, one of which contained contact numbers for Salcedo and Emmanuel Flores, a fourth

3

Inglewood 13 gang member. Police later searched Tamayo's residence and found a Mini 14 Ruger rifle and loaded magazine, a Domino's Pizza shirt, and an insulated pizza bag. Then they searched Flores's residence and found manuals and official papers from Ross, a "porcelain-style hand" molded into a gang sign, and various gang paraphernalia, including photographs of Flores and others making gang signs.

Tamayo, Williams, Salcedo and Flores were all charged in the same information. (Salcedo and Flores are not part of this appeal.) Tamayo and Williams were charged with multiple counts of robbery and kidnapping for robbery, attempted robbery, conspiracy to commit robbery, and possession of an assault weapon, and it was alleged they committed the crimes for gang purposes.

### C. Expert Testimony

Inglewood Police Officer Daniel Milchovich testified as an expert about the Inglewood 13 gang, which has roughly 350 members and four or five major cliques. The gang claims all of Inglewood as its "turf." Its primary activities include vandalism, robbery, carjacking, assault, including shootings, and murder. Respect is important to the gang, and signs of disrespect would likely result in violence. For example, Milchovich testified that if a person who was not a member were to display a gang tattoo or hand sign, the result could be "an altercation, a fight, being jumped, being assaulted, being stabbed. It could result in murder. It's that serious."

Inglewood 13 gang members obtain status within the gang through various means, including committing crimes and assisting other gang members in committing crimes. Gang members commit crimes together to prove their dedication to the gang and to promoting its status, and also to decrease the chance that one perpetrator will identify another to police or testify against him at trial.

In responding to a hypothetical question based on the circumstances of this case, Milchovich opined that such a crime would have been committed for the benefit of, at the direction of, or in association with a criminal street gang. His opinion was based on the way in which the gang members worked cooperatively to accomplish the robberies, the

4

enhancement to the gang's reputation for violence, and the gang's ability to use the proceeds from the robberies to fund its activities.

### D. Verdict and Sentence

Tamayo was convicted of five counts of robbery and one count each of attempted robbery and conspiracy to commit robbery, and the jury found the crimes were committed for gang purposes. He was sentenced to an aggregate prison term of 49 years and eight months. Williams was convicted of four counts of robbery and one count each of attempted robbery and conspiracy to commit robbery, and the jury found the crimes were committed for gang purposes. He was sentenced to 45 years and four months. Both appealed.

## DISCUSSION

### A. Gang Enhancement

Appellants contend no evidence supports the jury's finding that their sentence was subject to a gang enhancement because no evidence established the robberies were committed in association with or to benefit a gang. The argument is without merit.

In 1988, the Legislature found that "California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods." (Pen. Code, § 186.21.)[1] "[T]o seek the eradication of criminal activity by street gangs," the Legislature enacted the Street Terrorism Enforcement and Prevention Act (the STEP Act), section 186.20 et seq. (§ 186.21.)

The STEP Act prescribes enhanced penalties for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) The act defines a "criminal street gang" as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

5

or more [enumerated] criminal acts . . . having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).)

The STEP Act "does not criminalize mere gang membership; rather, it imposes increased criminal penalties only when the criminal conduct is felonious and committed not only 'for the benefit of, at the direction of, or in association with' a group that meets the specific statutory conditions of a 'criminal street gang,' but also with the 'specific intent to promote, further, or assist in any criminal conduct by gang members." (*People v. Gardeley* (1996) 14 Cal.4th 605, 623-624.) Not every crime committed by gang members is intended to benefit the gang. But "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*People v. Albillar* (2010) 51 Cal.4th 47, 68.) Gang enhancement elements must be established beyond a reasonable doubt by substantial evidence. (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar*, *supra*, 51 Cal.4th at pp. 59-60.) "To prove a gang allegation, an expert witness may testify about criminal street gangs." (*People v. Romero* (2006) 140 Cal.App.4th 15, 18.)

6

Substantial evidence demonstrates the Ross store robberies were committed in association with Inglewood 13 and for its benefit.

Appellants concede the evidence established they were Inglewood 13 members who intentionally committed crimes with two other members. This fact alone established they acted in association with Inglewood 13 with specific intent to assist in criminal conduct by gang members, which is enough to justify the sentencing enhancement. (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [jury may "reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members"].)

Substantial evidence also indicated appellants acted for the benefit of Inglewood 13. As Officer Milchovich explained, respect and status are important elements of gang membership and can be earned by committing crimes with other gang members, as doing so demonstrates courage and dedication to the gang and to promoting its status. Respect and status earned by individual gang members strengthens the gang as a whole. Committing crimes with fellow gang members also increases the chances of success, because a participant may rely on the others' cooperation and on the gang's internal code to ensure that no participant will cooperate with the police. Because appellants and Salcedo and Flores were all Inglewood 13 members they could rely on one another in committing the robberies. This evidence amply establishes that "defendants came together *as gang members*" to commit the Ross store robberies. (*People v. Albillar*, *supra*, 51 Cal.4th at p. 62 [evidence that rape was committed by three gang members in concert supported gang enhancement].)

Appellants acknowledge the evidence showed they themselves benefitted from the crimes and associated with other gang members to commit them, but argue no benefit *to the gang* resulted because no evidence showed *the gang* received any robbery proceeds or its reputation was enhanced. They argue association with gang members is not association with the gang and money obtained by gang members cannot be said to have been obtained by the gang. Appellants thus purport to draw a distinction between gang members and the gang itself. The distinction is illusory.

7

A gang is an association of individuals, not a tangible entity separate from the individuals. The word "gang" is a synecdoche that identifies both the individuals and the group they make up. Association with a gang for purposes of section 186.22 is therefore satisfied by association with at least one gang member. Given that by statutory definition a gang may comprise as few as three individuals (§ 186.22, subd. (f)), association with three gang members necessarily supports a reasonable inference of association with the gang.

In a similar vein, money obtained by several gang members working in concert may be reasonably inferred to redound to the benefit of the gang itself. We acknowledge that "[n]ot every crime committed by gang members is related to a gang" (*People v. Albillar*, *supra*, 51 Cal.4th at p. 60), and "it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang" (*People v. Morales*, *supra*, 112 Cal.App.4th at p. 1198). But the "typical close case is one in which one gang member, acting alone, commits a crime." (*Ibid.*; see, e.g., *In re Daniel C*. (2011) 195 Cal.App.4th 1350, 1361 [gang enhancement reversed where perpetrator acted alone]; *People v. Ochoa* (2009) 179 Cal.App.4th 650 [same]; *People v. Ramon* (2009) 175 Cal.App.4th 843 [gang enhancement reversed where two perpetrators were gang members]; *In re Frank S*. (2006) 141 Cal.App.4th 1192 [one perpetrator]; see also *People v. Albarran* (2007) 149 Cal.App.4th 214 [shooting committed by gang member and unidentified associate did not support inference that shooting was gang motivated].) Given that a gang may consist of three individuals, evidence showing that four Inglewood 13 members received money from the Ross store robberies permitted the jury reasonably to conclude Inglewood 13 itself benefitted from them.

Appellants argue that to show a gang benefitted from money obtained by its members the prosecution must show the money was spent on or earmarked for further criminal activity. We disagree. Although by definition one or more of a gang's primary activities is crime (§ 186.22, subd. (f)), that need not be its only activity, and thus the money need not be spent only to further crime to benefit the gang.

Furthermore, substantial evidence indicated Inglewood 13 received non-monetary benefits from the Ross store robberies. As Officer Milchovich opined, robberies such as these establish and demonstrate the perpetrators' solidarity and enhance their reputations and status with one another. Solidarity and reputation are associational phenomena, and strengthening them in individuals strengthens the association.

The gang enhancement was proper.

## B.    Conspiracy

Williams contends the trial court erred in instructing the jury on a conspiracy theory of liability for the robberies at which he was not present, arguing conspiracy is not a valid theory of criminal liability. Williams acknowledges that well established California law is to the contrary, but argues the law is wrong and invites us to disapprove clear, longstanding Supreme Court precedent. We have no authority or inclination to do so.

"One who conspires with others to commit a felony is guilty as a principal." (*In re Hardy* (2007) 41 Cal.4th 977, 1025; *People v. Kauffman* (1907) 152 Cal. 331, 334 ["'The general rule is well settled that where several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance of any prosecution of the common design for which they combine.'"])

## C.    Gang Enhancement for Attempted Robbery

The jury found appellants guilty of attempted robbery of the Ross store on Figueroa in Los Angeles and found true the street gang allegation as to that crime. The trial court imposed a consecutive sentence of eight months for the attempted robbery plus three years and four months for the gang enhancement. Appellants contend the enhancement was excessive, and the Attorney General concedes the point.

We agree. When a defendant is convicted of a violent felony as defined in section 667.5, subdivision (c), a gang enhancement is punishable by a term of 10 years. (§ 186.22, subd. (b)(1)(C).) When a defendant is convicted of a serious felony as defined in section 1192.7, subdivision (c), a gang enhancement is punishable by a term of five years.

9

(§ 186.22, subd. (b)(1)(B).)  Robbery is a violent felony (§ 667.5, subd. (c)(9)), but attempted robbery is only a serious felony (§ 1192.7, subd. (c)(19) & (39)).  The appropriate enhancement was therefore one-third of five years, not 10, or one year and eight months, not three years and four months.  (See § 1170.1, subd. (a) [one-third enhancement imposed for consecutive subordinate crimes].)

**DISPOSITION**

The convictions are affirmed.  The trial court is directed to amend the abstract of judgment to reflect a consecutive sentence enhancement of one year and eight months instead of three years and four months on count 12 for both appellants, and forward a copy thereof to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:



JOHNSON, J.


WILEY, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.